## OWENS BOTTLE CO. v. LIBBEY GLASS CO.

(Circuit Court of Appeals, Sixth Circuit. December 11, 1925.)

### No. 4303.

1. Patents ⬅215—Right of company granting use of patents to use own patents held governed by reservations and limitations made in grant.

Where plaintiff and defendant each granted to other restricted rights to use their respective patents, defendant's right to use its own patents was defined by reservations and limitations expressed in its grant to plaintiff, and not by terms of plaintiff's grant to defendant.

2. Patents ⬅216—Purpose and intention of parties contracting for use of patent for manufacturing bottles held not to include vials.

Where distinction between bottles blown from molten glass and vials made from glass tubing was known to parties contracting for use of patents for making of bottles, it will be

presumed that word "bottle," used in contract was not intended to include vials, particularly in view of continued manufacture by grantor, to which grantee made no objection.

**3. Patents ⊚⟹216—Action of officers of corporation, to whom use of patent had been granted, in assisting in sale of other use for patent, held inconsistent with claim that they had exclusive right.**

Action of officers of corporation, granted use of patent for manufacturing bottles, in assisting in bringing about arrangement between grantor of patent and third party for use of patent in making vials, *held* inconsistent with claim that they understood and believed that they had been given exclusive right to use patents in making of lime glass tubing for use in manufacture of vials.

Appeal from the District Court of the United States for the Western Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action by the Owens Bottle Company against the Libbey Glass Company. From a decree for defendant, plaintiff appeals. Affirmed.

Harry W. Morgan, of Toledo, Ohio (Thos. H. Tracy, of Toledo, Ohio, on the brief), for appellant.

Wilber Owen and H. W. Fraser, both of Toledo, Ohio, for appellee.

Before DONAHUE, MACK, and MOORMAN, Circuit Judges.

DONAHUE, Circuit Judge. Action was brought in the District Court by the Owens Bottle Company against the Libbey Glass Company to enjoin the defendant from infringing the plaintiff's exclusive right to use the Danner drawing machine, embodying five separate patents owned by defendant, in which patents plaintiffs claimed an exclusive license for specific purposes, and known as the Danner patents, for making glass tubing, and to recover profits and damages.

The plaintiff is the successor of the Owen Bottle Machine Company and the owner of all rights and interests of the Toledo Glass Company under a license granting it the exclusive right to use patents and processes owned or controlled or thereafter acquired by defendant in the manufacture of bottles and jars of all kinds and parts therefor, except cut and engraved glassware and blanks for manufacturing the same. The Illinois Glass Company owns substantially all of the stock of the Kimble Glass Company. The five Danner patents relate to a mechanical process for drawing glass in cylindrical form, and all of these patents may be embodied in a single machine. The Libbey Glass Company

is the owner of these patents, and has constructed three of these machines for the Kimble Glass Company, for use, under a restricted license, in the production of lime glass tubing designed for the manufacture of vials. It is the claim of the plaintiff that vials are bottles; that lime glass tubings designed for use in making vials are parts of bottles; that the Danner process is a blowing process; that the machine involving these patents is a glass-blowing machine; and that the use of the Danner machine to make lime glass tubing infringes its exclusive right to use the same in the manufacture of bottles, given and granted by the defendant to plaintiff's predecessor in title, the Toledo Glass Company, on December 27, 1918.

The defendant denies that "vials" are "bottles," within the meaning of its contracts with the Toledo Glass Company, and further avers that the parties by their acts, words, and conduct have evidenced different understanding and construction of this contract than as now contended by plaintiff, and that plaintiff, by reason of the acts and conduct of its managing officers, is estopped from asserting that the use of the Danner machine in the manufacturing of lime glass tubing infringes its license to the exclusive use thereof for purposes other than expressly excepted by the terms of the grant.

While the contract of December 27, 1918, purports to be a substitute for the contract of January 25, 1905, nevertheless it provides that the Toledo Glass Company shall retain all the rights in and to the patents and future invention owned or controlled by the defendant and acquired by it under the 1905 agreement. The 1905 agreement grants to the Toledo Glass Company "the sole and exclusive license and rights to use and practice any and all processes, methods, mixtures, improvements, inventions, and patents now, or at any time hereafter owned, acquired, or controlled by said the Libbey Glass Company, under which said the Libbey Glass Company may have any power to grant any right or license; but such license shall extend for use only in the manufacture of bottles and jars of all kinds and of parts therefor, except cut and engraved glassware, and except blanks for use in the manufacture of cut and engraved glassware."

By the same agreement the Toledo Glass Company granted to defendant "the sole and exclusive license to practice the inventions for or relating to methods of blowing glass and the manufacture and preparation of the same then owned or controlled, or that might thereafter at any time be acquired or controlled,

by the Toledo Glass Company," with the further provision "but the license rights so granted shall relate only to the manufacture of electrical glassware, bulbs and tubing, railroad lantern globes and semaphore lenses, cut and engraved glassware, and blanks for the manufacture of cut glassware." In the agreement of 1918 the language of the grant by the Toledo Glass Company to defendant is substantially the same, but the limitations of the grant read as follows: "Said license is limited to the manufacture, use, and sale within the United States and its territories of electrical glassware, bulbs, cane glass and tubing, sealed containers for electrical devices, railroad lantern globes and semaphore lenses, cut and engraved glassware and blanks for the manufacture of cut glassware." The limitation of the grant in this contract by the Libbey Glass Company to the Toledo Glass Company reads in the same words as in the contract of 1905.

[1] It is claimed upon the part of appellant that the word "electrical," in the limitation of its 1918 grant to defendant, modifies not only glassware, but also "bulbs, cane glass and tubing." While we do not think this construction is either grammatically or logically correct, yet we do not regard this of controlling importance, for the reason that the defendant's right to use its own patents is not predicated upon the grant to it by the Toledo Glass Company to use patents and processes owned or controlled by the latter company, but rather by the reservations and limitations in the grant of the Libbey Company to the Toledo Glass Company to use patents owned by the Libbey Company. In other words, it would seem that it was not within the contemplation of the parties that the defendant should first grant a restricted license to the Toledo Glass Company to use patents owned by the Libbey Glass Company, and the Toledo Glass Company should in turn grant a restricted license to the defendant to use its own patents, but rather that the right of each company to use its own patents must be determined by the reservations and limitations expressed in the respective grants.

For this reason we think the right of the Libbey Company to use its own patents in the manufacture of lime glass tubing depends upon whether "vials" are "bottles," within the meaning of the grant of the defendant to the Toledo Glass Company. It appears from the evidence that there is a clear distinction recognized in the glass industry between "bottles" and "vials" and the methods and processes of their manufacture; that in the manufacture of bottles the molten glass is blown into bottle shape in an iron mold; that, in the manufacture of vials, glass tubing is cut in sections of the length required for two vials, that the ends of these sections are formed into necks, that the tubing is then cut in two parts, and bottoms formed on each. This is all done by machinery.

[2] This distinction between bottles blown from the molten glass and vials made from glass tubing is so well recognized in the industry that the manufacturers of vials and the laborers employed in their manufacture maintain separate organizations from the organizations of manufacturers and organizations of laborers in the bottle business. This distinction was, of course, known to the contracting parties, who for many years have been engaged in the glass industry, when the license agreements of 1905 and 1918 were written. From these facts the presumption would naturally obtain that it was not the purpose and intention of the contracting parties that the word "bottles" used in this grant should include "vials," and certainly their subsequent conduct is not consistent with any such claim.

This conclusion finds further support in the fact that when the 1905 contract was written, and ever since that time, the Libbey Company has been manufacturing lime glass tubing to be used for any and all commercial purposes, including the making of vials. While the manufacture of this tubing was not large in comparison with its manufacture of lead glass tubing for use in industries where great heat resistance is required, yet enough was manufactured and marketed to advise the plaintiff that defendant claimed the right to manufacture these tubings under its own or plaintiff's patents, yet the plaintiff with knowledge of these facts made no objections or claims to the contrary. It was only after the defendant had furnished some of the Danner machines to the Kimble Glass Company, and had granted to that company a license to use the same in the manufacture of lime glass tubing for use in making vials, that the plaintiff asserted its claim to the exclusive license to use these patents for this purpose.

Upon the question of estoppel, it appears from the evidence that Owens, the vice president of the plaintiff company, witnessed the commercial operation of the Danner machine in Toledo, and later suggested to Mr. Levis, an officer of the Illinois Glass Company, that the Illinois Glass Company secure one of these machines for the purpose of making

glass tubing for vials in its Kimble plant at Vinland, N. J. At the request of Mr. Levis, Mr. Owens wrote to Mr. Robinson, an officer of the defendant company, and also talked with him in reference to the advisability of the defendant company licensing the Kimble Company to use the Danner machine. Mr. Levis also wrote Mr. Biggers, treasurer of the Owens Bottle Company, inquiring about the Danner tube-drawing machine, and Mr. Biggers, after some investigation, wrote Mr. Levis that experimental work on this machine had been discontinued until the pressure of other branches of its business had lessened. While Mr. Owens and Mr. Biggers, notwithstanding their kindly efforts, were unable to bring about an agreement between the Illinois Glass Company and the Libbey Glass Company, by which a Danner machine or machines might be installed in the Kimble plant, it is not conceivable that these men, skilled in the glass industry, could not have fully understood the nature of the Danner patents, or the purposes for which they were used.

It further appears that Mr. Wallbridge, secretary of the Owens Company, arranged for a meeting between the officials of the Libbey Company and the officials of the Illinois Company for the sole purpose of bringing about this license to the Kimble Company, and that, following this meeting, Mr. Brown, the president of the Owens Company, arranged for a second meeting between the officials of these two companies for the same purpose. Shortly after this second meeting Mr. Wallbridge discussed with the officials of the Libbey Company and the Illinois Company the nature and extent of this proposed license to the Kimble Company, and offered suggestions in reference to royalties, terms, etc. This was probably in April. In June of the same year, the license contract that the Owens Company now claims infringes its exclusive right to the use of the Danner patents was executed.

[3] If it were conceded that these activities on the part of the managing officers of the Owens Bottle Company, in their efforts to assist in bringing about this arrangement between the defendant and the Illinois Glass Company for the use of the Danner machines in its Kimble plant, would not estop the plaintiff corporation from asserting a claim to an exclusive license to the use of these machines in the manufacture of lime glass tubing, nevertheless their words, actions, and conduct in this behalf are wholly inconsistent with their present claim that they understood and believed that the defendant had, by the contracts of 1905 or 1918, granted to the Toledo Glass Company the exclusive right to the use of its patents in the making of lime glass tubing for use in the manufacture of vials, or that the word "bottles," as used in these contracts, included "vials."

For the reasons stated, the decree of the District Court is affirmed.